UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 145 |
| v. | ) | |
| | ) | Honorable Virginia M. Kendall |
| ERWIN ACOX | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On April 3, 2008, defendant Erwin Acox ("Acox") was convicted of two counts of attempted

bank robbery and one count of bank robbery, in violation of 18 U.S.C. § 2113(a). Acox now moves

this Court for a judgment of acquittal or, alternatively, for a new trial with respect to all three counts.

For the reasons set forth below, Acox's Post Trial Motion for Judgment of Acquittal and/or for a

New Trial is granted in part and denied in part. Specifically, Acox's motion for a judgment of

acquittal is granted as to Counts I and II, but denied as to Count III. In addition, Acox's motion for

a new trial is denied as to all three counts.

## BACKGROUND

Acox was charged in a three-count Indictment with the following crimes: (1) attempted bank

robbery of the Fifth Third Bank located at 900 West Armitage, Chicago, Illinois (the "Fifth Third

Bank") on March 21, 2007; (2) attempted bank robbery of the North Community Bank located at

2201 North Halsted, Chicago, Illinois (the "Halsted North Community Bank") on March 21, 2007;

and (3) bank robbery of the North Community Bank located at 1401 West Belmont, Chicago, Illinois

(the "Belmont North Community Bank") on January 20, 2007. (Indictment 1-3.) After a jury trial,

Acox was convicted of all three counts.

Prior to and during the course of trial, Acox made oral and written motions requesting the

disclosure of certain evidence related to a photo array and requested a jury instruction outlining a

lesser included offense with respect to Count III.  These motions were denied by the Court.  At the close of the Government's case-in-chief, Acox moved for a judgment of acquittal on Count II pursuant to Federal Rule of Criminal Procedure 29(a), which the Court took under advisement. Acox now moves for a judgment of acquittal or, alternatively, for a new trial with respect to all three counts, asserting that the Court erred in its denial of his motions and that the evidence presented failed to establish guilt beyond a reasonable doubt.

## **DISCUSSION**

I.      Motion for a Judgment of Acquittal

A motion for a judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the defendant.  *See* Fed. R. Crim. P. 29.  Such a motion should be denied if after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004).  A conviction should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (*citing United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

A.      *Attempted Bank Robbery (Counts I and II)*

Acox challenges the sufficiency of the evidence presented to convict him of attempted bank robbery of the Fifth Third Bank (Count I) and attempted bank robbery of the Halsted North Community Bank (Count II).  At trial, the parties presented the following evidence in support of their respective positions with regard to Counts I and II.

According to Chicago police officer Patrick Bryant ("Officer Bryant"), on the evening of

March 21, 2007, Officer Bryant observed a man (who he later identified as Acox) with what he described as "an obvious fake beard," sunglasses, and a knit skull cap, enter the Fifth Third Bank. (Trial Tr., vol. 2-A, 290-93, 302-03, Apr. 1, 2008.) After a few seconds, Acox walked out of the bank. (Trial Tr., vol. 2-A, 302, Apr. 1, 2008.) Jeremy Ruberg ("Ruberg"), who was working at the Fifth Third Bank on March 21, 2007, testified that he was standing at the teller counter with his manager when he saw Acox step into the bank wearing a black beard and sunglasses. (Trial Tr. vol. 2-A, 335, 337-39, Apr. 1, 2008.) At the time, no one else was in the front of the bank. (Trial Tr. vol. 2-A, 346, Apr. 1, 2008.) Ruberg and his manager started to greet Acox, and as they did, Acox looked at them, turned around, and left the building. (Trial Tr. vol. 2-A, 339, Apr. 1, 2008.) Ruberg did not look at Acox's hands. (Trial Tr. vol. 2-A, 345, Apr. 1, 2008.) In addition, Acox uttered no words to Ruberg and made no noticeable hand gestures to him from the doorway. (*Id.*) Subsequently, Ruberg told his manager that the encounter seemed suspicious. (Trial Tr. vol. 2-A, 339-41, Apr. 1, 2008.) Ruberg's manager locked the door pursuant to bank policy and called the police. (*Id.*) However, Ruberg did not trigger the police alarm that was located behind the teller counter. (Trial Tr. vol. 2-A 345, Apr. 1, 2008.)

Meanwhile, outside of the bank, Officer Bryant observed Acox exit the bank and saw someone look out of the window at the bank and "kind of" look in Acox's direction; but no one came out looking alarmed. (Trial Tr. vol. 2-A 311, Apr. 1, 2008.) Officer Bryant followed Acox, who began walking away from the bank. (Trial Tr. vol. 2-A, 296-98, April 1, 2008.) Officer Bryant contacted one of his sergeants and told him that he was following someone who had just walked into a bank for a few seconds while wearing a disguise and who Officer Bryant believed may attempt to rob another bank. (Trial Tr. vol. 2-A, 296, Apr. 1, 2008.) As Acox proceeded towards the second

3

bank, Officer Byrant observed Acox take off his hat, fake beard, and sunglasses.  (Trial Tr. vol. 2-A, 296-98, Apr. 1, 2008.)

According to Officer Bryant, Acox then stopped east of the Halsted North Community Bank and stared at the bank for at least one minute before turning into a nearby alley  (Trial Tr. vol. 2-A, 297-300, 312, Apr. 1, 2008.)  By the time Officer Bryant caught sight of Acox in the alley, Acox had put on the fake beard, sunglasses, and hat.  (Trial Tr. vol. 2-A, 300, Apr. 1, 2008.)  Acox then exited on the other side of the alley and walked east on Belden towards Halsted, the street on which the bank was located.  (Trial Tr. vol. 2-A, 300-02, 313, Apr. 1, 2008.)  According to Officer Bryant, Acox proceeded to the east side of Halsted (the side of the street on which the Halsted North Community Bank was located) at which time Bryant arrested him, approximately three-quarters of a block away from the second bank.  (Trial Tr. vol. 2-A, 302, 310, 313, Apr. 1, 2008.)

Officer Thomas Parham ("Officer Parham") also testified regarding Acox's arrest on March 21, 2007.  Officer Parham explained that, around the time that Acox proceeded out of the alley, Officer Parham had arrived on the scene in response to a radio call of a possible bank robbery.  (Trial Tr. vol. 2-A, 317-19, Apr. 1, 2008.)  Officer Parham stated that he followed Acox as he exited the alley on to Belden, walked east on Belden, and, upon reaching Halsted, crossed from the west side to the east side of Halsted on a southeast angle.  (Trial Tr. vol. 2-A, 318-20, 326 Apr. 1, 2008.)  Officer Parham further testified that, when Officer Parham and his partner, Officer Prill, called out to Acox, Acox made a motion with his hand and threw something to the ground.  (Trial Tr. vol. 2-A, 320, Apr. 1, 2008.)   According to Officer Bryant, as Officers Parham and Prill stopped Acox, he saw Acox rip something up and throw it to the ground.  (Trial Tr. vol. 2-A, 302, Apr. 1, 2008.)  Officer Prill immediately picked up the item, which law enforcement authorities later discovered

was a ripped up note that read: "Cash, no dye or get hit." (Trial Tr. vol. 2-A, 323-25, Apr. 1, 2008.) During a protective patdown, Officer Parham also recovered a hammer from Acox's waistband, an ADT device from his right hand, a fake beard, gloves, sunglasses, and a hat. (Trial Tr. vol. 2-A, 320-25, Apr. 1, 2008.)

Officer Parham testified that he arrested Acox approximately 50 to 75 feet from the corner of Belden and Halsted, which he estimated to be approximately 2253 Halsted. (Trial Tr. vol. 2-A, 326-27, Apr. 1, 2008.) In a police report regarding the incident, however, Officer Parham noted that he arrested Acox at 2300 North Halsted, the corner of Belden and Halsted. (Trial Tr. vol. 2-A, 327-28, Apr. 1, 2008.) The Halsted North Community Bank was located at 2201 North Halsted, the northeast corner of Webster and Halsted. (Trial Tr. vol. 2-A 308-09, 347, Apr. 1, 2008.) At trial, Officer Parham explained that he sometimes gave cross street approximations in his reports. (Trial Tr. vol. 2-A, 331-32, Apr. 1, 2008.)

Rochelle Chew ("Chew"), head teller at the Halsted North Community Bank, testified that while the bank was open on March 21, 2007, she did not see Acox in the bank, nor was she aware of anyone trying to rob the bank that day. (Trial Tr. vol. 2-A, 347-49, Apr. 1, 2008.)

Acox also testified regarding his activities on March 21, 2007. Specifically, Acox testified that he took a pill, which was a combination of acid, PCP, and ecstasy, and that he started to experience hallucinations at approximately 2 p.m. (Trial Tr. vol. 3B, 367-68, Apr. 2, 2008.) Acox recalled walking at some point on March 21, 2007. (Trial Tr. vol. 3B, 669, Apr. 2, 2008.) He also recounted for the jury how the walls seemed to peel away and that the shape of objects seemed to morph, but could not recall much else regarding the actions prior to Acox's arrest, as testified to by Officer Bryant, Officer Parham, and Ruberg. (Trial Tr. vol. 3B, 667-73, 680-81, Apr. 2, 2008.)

Having reviewed the evidence put forth at trial, the Court concludes that a reasonable jury could not find beyond a reasonable doubt that Acox's actions with respect to Counts I and II constituted force and violence or intimidation, an essential element to the offense of attempted bank robbery under 18 U.S.C. § 2113(a). Section 2113(a) defines the offense of attempted bank robbery as follows: "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . money . . . in the care, custody, control, management, or possession of, any bank." 18 U.S.C. § 2113(a). To sustain a conviction for attempt to commit a crime, the Government must prove that the defendant: (1) had the requisite culpable intent and (2) took a substantial step toward the commission of the crime. *United States v. Schramm*, 715 F.2d 1253, 1254 (7th Cir. 1983). In addition, "actual force and violence or intimidation is required for a conviction under the first paragraph of § 2113(a), whether the defendant succeeds (takes) or fails (attempts to take) in his robbery attempt." *United States v. Thornton*, No. 07-2839, 2008 U.S. App. LEXIS 18329, at *15 (7th Cir. Aug. 26, 2008).

Intimidation under 18 U.S.C. § 2113(a) is defined as "'saying or doing something in such a way as would place a reasonable person in fear.'" *Id.* (*quoting United States v. Burnley*, No. 07-1314, 2008 U.S. App. LEXIS 15385, at *4 (7th Cir. July 21, 2008)). "Intimidation is the threat of force, which 'exists in situations where the defendant's conduct and words were calculated to create the impression that any resistance or defiance . . . would be met with force.'" *Id.* (*quoting United States v. Burnley*, No. 07 C 1314, 2008 U.S. App. LEXIS 15385, at *4-5 (7th Cir. July 21, 2008)) (internal citations omitted). The intimidation inquiry is an objective one. *Id.* Thus, the Court must ask whether "the defendant's words or acts cause an ordinary person to reasonably feel threatened under the circumstances?" *Id.* (*quoting United States v. Clark*, 227 F.3d 771, 775 (7th Cir. 2000)).

Here, neither attempted bank robbery conviction is supported by the requisite evidence of actual force and violence or intimidation. With respect to the Count I—attempted bank robbery of the Fifth Third Bank—the evidence establishes only that Acox walked in the bank wearing a fake beard and sunglasses, looked at Ruberg and his manager, and walked out. There was no evidence of a threat, either implicit or explicit, made by Acox; Acox made no demand for money, nor did he imply that a failure to comply would result in more force. *See, e.g., United States v. Burnley*, No. 07 C 1314, 2008 U.S. App. LEXIS 15385, at *4-8 (7th Cir. July 21, 2008) (intimidation established where the defendant demanded money with no dye packs or bait bills, the tellers felt compelled to comply, and there was some evidence that the tellers experienced fear and nervousness). To the contrary, Ruberg testified that Acox uttered no words and made no noticeable hand gestures to Ruberg from the doorway. Ruberg did not even look at Acox's hands during the brief encounter, nor did he observe the hammer in his waistband that was retrieved later that day. Ultimately, "[t]here was no evidence from which anyone at the bank--whether bank personnel, a bank customer . . . , or even a simple passerby--could reasonably infer that [Acox] had a weapon or would use force." *Thornton*, 2008 U.S. App. LEXIS 18329, at *24. Nor could Acox's mere presence in the bank rise to the level of conduct sufficient to establish force and violence or intimidation beyond a reasonable doubt. *See id.* Finally, the Court notes that, while Acox's actions seemed suspicious to Ruberg and Ruberg's manager subsequently locked the door and called the police, this evidence does not establish that Acox used force and violence or intimidation, as Ruberg's suspicion was not reasonably based on Acox's actual acts or words of intimidation.[1] *See id.* ("Contreras had every

---

[1] The record reveals a closer question as to whether Acox's actions with respect to Count I constitute a "substantial step" toward the commission of bank robbery. To commit a substantial step, the defendant must engage in "conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985), *cert. denied*, 474 U.S. 1076 (1986). "[P]reparation alone is not enough"; instead, the defendant

right to infer that something was not right about the situation, but Thornton's words and actions did not give rise to a reasonable fear of the threat of force. . . . Under the circumstances presented, no reasonable person in Contreras's shoes would have felt threatened by acts or words of intimidation.").       The evidence put forth in support of Count II—attempted bank robbery of the Halsted North Community Bank—suffers from the same infirmity.  According to the testimony of law enforcement authorities on the scene, Acox was arrested before he entered into or even reached the bank entrance.  The evidence presented at trial does not indicate that Acox had contact with any bank personnel, bank customer, or random passerby.  Nor did the Government present evidence indicating that anyone inside the bank was aware of Acox's presence near the bank prior to the arrest.  To be sure, Chew, head teller of the bank, testified that she did not see Acox in the bank and was unaware of anyone trying to rob the bank on March 21, 2007.  Similar to Count I, there was simply no evidence from which a jury could find beyond a reasonable doubt that Acox said or did

---

must commit "some appreciable fragment of the crime" and the preparation must progress "to such a stage that the crime would have come to pass in the due course of the normal train of events had not an extraneous force . . . intervened." *United States v. Schramm*, 715 F.2d 1253, 1254-55 (7th Cir. 1983).  "Thus, the behavior must be of such a nature 'that a reasonable observer viewing it in the context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.'" *Rovetuso*, 768 F.2d at 821 (*quoting United States v. Manley*, 632 F.2d 978, 988 (2d Cir. 1980)).

        Here, Acox obtained a disguise, which included a fake beard and sunglasses, and subsequently put on the disguise before entering the bank.  A juror could also reasonably conclude that he entered the bank while in possession a hammer, an ADT device, and a demand note stating, "Give me cash, no dye, or get hit."  Nevertheless, Acox exited the bank almost as soon as he entered; he stepped in the bank, looked at Ruberg, and exited the facility as Ruberg and his manager started to greet him.  According to the Government, the presence of Ruberg and his manager was the intervening force that halted Acox's commission of the crime.  Thus, to determine whether Acox took a substantial step, the Court must ask whether Acox's actions constitute "some appreciable fragment of the crime" and whether a reasonable jury could find that Acox's endeavor to rob the bank "would have been consummated but for [the presence of Ruberg and his manager behind the teller counter.]" *See United States v. Korich*, No. 93-1958, 1994 U.S. App. LEXIS 3323, at *11 (7th Cir. 1994).  Viewing the evidence in the light most favorable to the Government, the Court questions whether a juror could reach such a conclusion beyond a reasonable doubt.  *Compare id.* at *7-12 (attempted bank robbery conviction affirmed where the defendant arranged for a getaway driver, ensured that the bank was open, planned to take money from the teller drawers and the safe, estimated the length of time for the robbery, walked in the bank masked while carrying a fake bomb, but left soon after, and told two individuals that he left because there were no tellers for him to carry out the plan).  Nevertheless, the Court need not delve into such an inquiry at this juncture, as it has already determined that a judgment of acquittal is warranted by the absence of evidence regarding Acox's use of actual force and violence or intimidation.

something that would constitute force and violence or intimidation, as required to sustain a crime of attempted bank robber under 18 U.S.C. § 2113(a).[2]  *See id.* at *17-27 (attempted bank robbery conviction reversed where the evidence was insufficient to establish that the defendant used force and violence or intimidation, despite the fact that the defendant planned to rob a bank, acquired a getaway driver, and went to the bank door in a disguise while carrying a gun but did not enter because a customer confronted the defendant).

Based on the evidence put forth at trial, a reasonable jury could not find beyond a reasonable doubt that Acox's actions with respect to Counts I and II constituted force and violence or intimidation under 18 U.S.C. § 2113(a).  Regardless of whether the jury found the testimony of Acox to be not credible, the Government still maintains the burden to prove this element.  Significantly, the Government never argued, during closing arguments or in its most recent submission to the Court, that such force and violence or intimidation was used in conjunction with the two charged attempted bank robberies.  Thus, because the Government failed to prove an essential element of the crimes charged, the Court grants Acox's motion for a judgment of acquittal as to Counts I and II.

B.      *Bank Robbery (Count III)*

Acox also moves for a judgment of acquittal on his bank robbery conviction.  In support of his position, Acox contends that the Government did not prove beyond a reasonable doubt that Acox was the perpetrator of the January 20, 2007 bank robbery.  At trial, the parties submitted the following evidence regarding the bank robbery at issue.

---

[2] In his Motion for Judgment of Acquittal, Acox submits that his actions with respect to Count II are insufficient to establish attempt beyond a reasonable doubt.  As noted above, the Court has already determined that a judgment of acquittal is warranted as a result of the Government's failure to establish that Acox used force and violence or intimidation in conjunction with the charged offense.  Thus, the Court need not determine whether a rational trier of fact could have found beyond a reasonable doubt that Acox had the requisite culpable intent and took a substantial step towards the commission of the bank robbery.

Melissa Kee ("Kee"), a teller at the West Belmont North Community Bank, testified that she was working at the bank when the bank was robbed. (Trial Tr. vol 2-A, 349-50, 352, Apr. 1, 2008.) According to Kee, at approximately 2:30 p.m. on January 20, 2007, a man approached her teller window, pulled one hand out of his pocket and covered his other hand with it, and stated, "Put all the money in my hands or I'm going to start shooting." (Trial Tr. vol 2-A, 353, Apr. 1, 2008.) Kee ultimately gave the individual all the money in her drawer, along with a dye pack that was included in a row of ten dollar bills. (Trial Tr. vol 2-A, 353-55, Apr. 1, 2008.) In total, the robber received $166 dollars: $126 dollars in cash and $40 in $10 bills surrounding the bank dye pack. (Trial Tr. vol 2-A, 373, Apr. 1, 2008; Trial Tr. vol 2-B, 402-04, Apr. 1, 2008.)

Kee described the individual who robbed the bank as tall, dark-haired, heavier set man who was wearing a hat, a jacket with a hoodie, a scarf, and a lot of clothes. (Trial Tr. vol 2-A, 353, Apr. 1, 2008.) She could not recall if he had a fake mustache. (Trial Tr. vol 2-A, 378, Apr. 1, 2008.) Kee relayed the same description to officers shortly after the robbery. (Trial Tr. vol 2-A, 358, Apr. 1, 2008.) In addition, Kee told the Federal Bureau of Investigation (the "FBI") that the robber was of Hispanic origin and that he had brown eyes. (Trial Tr. vol 2-A, 370-71, Apr. 1, 2008.) Kee believed he was Hispanic because of his features and somewhat because of the way he spoke and his skin tone. (Trial Tr. vol 2-A, 372, 380-8, Apr. 1, 2008.) She further testified that her recollection was based upon the couple seconds she had to observe the robber's face. (Trial Tr. vol 2-A, 371, Apr. 1, 2008.)

On January 23, 2007, the FBI showed Kee a photo array, which included a photo of Acox, and asked her if the person who robbed the bank was included in the array. (Trial Tr. vol 2-A, 359-61, 376, Apr. 1, 2008.) Kee further testified that she wavered between a photo of Acox and a photo

of another individual with dark hair, but ultimately picked the other individual.  (Trial Tr. vol 2-A, 360-62, 377, 384 Apr. 1, 2008.)  Kee testified that she told the FBI agent that she was not sure if the individual she selected was the perpetrator.[3]  (Trial Tr. vol 2-A, 379, 386-87, Apr. 1, 2008.)  After the FBI agent left, Kee called Michelle Woods ("Woods"), branch manager of the Belmont North Community Bank on January 20, 2007, and told Woods that she believed she picked the wrong individual in the photo array.  (Trial Tr.  vol 2-A, 361-62, Apr. 1, 2008; Trial Tr. vol 2-B, 92, Apr. 1, 2008.)  Kee explained to Woods that she selected the individual because he had dark hair, but should have picked another individual (Acox) because all his physical features matched those of the robber.   (Trial Tr. vol 2-A, 361-62, Apr. 1, 2008.)   Specifically, Kee recalled the shape of the robber's eyes and lips and his higher cheek bones.  (Trial Tr. vol 2-A, 380, Apr. 1, 2008.)  Woods did not tell Kee that the FBI had also shown Woods a photo array after the robbery, nor did Woods give Kee any indication as to who Woods selected.  (Trial Tr. vol 2-A, 378, 385 Apr. 1, 2008.)

According to Kee, after her discussion with Woods (and approximately ten minutes after the FBI agents left her house), Kee called the FBI agents who initially showed her the photo array and asked them if she could review the array again.  (Trial Tr. vol 2-A, 362, Apr. 1, 2008.)   When the agents returned and showed Kee the photo array, Kee identified Acox as the bank robber.  (Trial Tr. vol 2-A, 364-66, Apr. 1, 2008.)  When testifying regarding Acox's photo at trial, Kee stated that she believed Acox looked Hispanic in his photo because of his lips and eyes.  (Trial Tr. vol 2-A, 387, Apr. 1, 2008.)

Woods testified that she also had an opportunity to observe the bank robber.  (Trial Tr. vol

---

[3] Agent Weber testified that  FBI Special Agent Garrett Croon ("Agent Croon") showed Kee the photo array. (Trial Tr. vol 3-B, 613, Apr. 2, 2008.)  Agent Weber further explained that he was told that Kee could not decide between the two individuals and that, as a result, Agent Croon did not have her initial the photo array.  (*Id.*)

2-B, 391-95, Apr. 1, 2008.) Specifically, Woods testified that she was sitting at a desk approximately fifteen to twenty feet away from the bank entrance when she saw the robber enter the bank; she was sure that he was there to rob the bank. (Trial Tr. vol 2-B, 393, Apr. 1, 2008.) Consequently, Woods watched the robber carefully and attempted to get a good look at him. (Trial Tr. vol 2-B, 394-96, Apr. 1, 2008.) At trial, Woods described the robber as a light-skinned male with pretty eyes, prominent cheek bones, prominent lips, and a fake mustache. (Trial Tr. vol 2-B, 393, 397, Apr. 1, 2008.) She further recalled that the robber had khaki pants, a beige jacket, tennis shoes, a yellow scarf, a hoodie, and thick black hair (that resembled a fake wig) sticking out from underneath a yellow hat. (Trial Tr. vol 2-B, 397, 415, Apr. 1, 2008.) In addition, she testified that, when speaking with law enforcement authorities regarding the robber, she described the robber as an individual of "mixed race,"[4] and, at one point, told an FBI agent that the robber was of Hispanic origin. (Trial Tr. vol 2-B, 414-15, Apr. 1, 2008.) Woods admitted that, when the robber first walked in the bank, he had a scarf covering his face. (Trial Tr. vol 2-B, 417, Apr. 1, 2008.) While Woods could not recall whether the robber pulled his scarf down, she maintained that she saw his fake mustache as he walked in the bank. (Trial Tr. vol 2-B, 417-20, Apr. 1, 2008.)

On January 21, 2008, Woods viewed a photographic lineup that included a photo of Acox and identified Acox as the bank robber (Trial Tr. vol 2-B, 405-08, Apr. 1, 2008.) At trial, Woods testified that, when she identified Acox, she was one-hundred percent confident in her decision; she recognized him from his physical features, including his eyes, lips, nose, and cheekbones. (Trial Tr. vol 2-B, 407-08, 415, 427, Apr. 1, 2008.)

In addition to Kee and Woods, Joan Gatz ("Gatz"), a bank customer who was sitting with

---

[4] Agent Croon's notes regarding his interview with Woods on January 20, 2007 do not reflect that Woods used the term "mixed race." (Trial Tr. vol 3-B, 657-58, Apr. 2, 2008.)

Woods when the robber entered the bank, testified that she also saw the robber from the back. (Trial Tr. vol 2-B, 395, 429-30, Apr. 1, 2008.) At trial, Gatz recalled that the robber wore a bright blue scarf around the lower part of his face, a "yellowish brown tone jacket," off season pants, and a tan or light-colored hoodie. (Trial Tr. vol 2-B, 431, 427, Apr. 1, 2008.) In addition, Gatz testified that she told an FBI agent that the robber was Hispanic, but explained that this was just a guess. (Trial Tr. vol 2-B, 435, Apr. 1, 2008.)

The jury also heard testimony from Chicago police officer George Martinez ("Officer Martinez") regarding evidence found near the bank on January 20, 2007. (Trial Tr. vol 2-B, 436-63, Apr. 1, 2008.) Specifically, Officer Martinez testified that he found U.S. currency with red dye stains in an alley behind the bank as well as a hat, blue scarf, and black glove in a gangway near the bank. (Trial Tr. vol 2-B, 441-50, 454-61, Apr. 1, 2008.) FBI case agent Thomas Weber ("Agent Weber") confirmed that the officers recovered eight dollars in the alley, as well as a yellow hat, blue scarf, and black glove. (Trial Tr. vol 3-A, 574-75, Apr. 2, 2008.)

James Higgins ("Higgins"), a manager of security for the Chicago Transit System (the "CTA"), also explained how the numerical code on Acox's CTA card showed where the CTA card had been used on January 20, 2007. (Trial Tr. vol 3-A, 557-66, Apr. 2, 2008.) Subsequently, Agent Weber testified that the CTA videos from January 20, 2007 showed Acox wearing a light blue scarf, which looked like the scarf worn by the bank robber during the robbery, at approximately 10:30 a.m. and no longer wearing the scarf at approximately 3:40 p.m. (Trial Tr. vol 3-A, 580-83, Apr. 2, 2008.) Acox was not wearing a beige jacket in either video. (Trial Tr. vol 3-B, 640, Apr. 2, 2008.)

According to Chicago police officer Christopher Kaporis ("Officer Kaporis") and his partner, Benny Pambuku ("Officer Pambuku"), Acox was subsequently arrested for reckless conduct

between 10:00 p.m. and 11:30 p.m. on January 20, 2007. (Trial Tr. vol 3-A, 528-32 539, 546-48, Apr. 2, 2008.) At trial, both officers testified that, on the night of January 20, 2007, they observed Acox standing in the middle of the street and disrupting traffic. (Trial Tr. vol 3-A, 530-31, 548-49, Apr. 2, 2008.) As a result, they followed Acox as he proceeded to a nearby sandwich shop. (*Id.*) According to Officer Pambuku, the cashier then refused Acox's attempt to purchase a sandwich. (Trial Tr. vol 3-A, 549, Apr. 2, 2008.) Officer Pambuku further testified that, when he asked the cashier why he refused to give Acox the sandwich, the cashier informed Officer Pambuku that Acox attempted to pay with money that was red in color. (*Id.*) Subsequently, the officers placed Acox in custody for reckless conduct. (Trial Tr. vol 3-A, 533, 549, Apr. 2, 2008.) According to Officer Pambuku, Officer Kaporis, and Agent Weber, at the time of the arrest, Acox had over $100 in red dye-stained money on his person as well as a state identification card and a Chicago Transit Card**.** (Trial Tr. vol 3-A, 533-37, 543,548-49, 553-54, 576-77, Apr. 2, 2008.) Additionally, Officer Kaporis testified that, at the time, Acox appeared "light skinned, maybe African-American." (Trial Tr. vol 3-A, 531, Apr. 2, 2008.) In a general offense report regarding the incident, Officer Kaporis described Acox as African-American. (Trial Tr. vol 3-A, 541-42, Apr. 2, 2008.) Additionally, in police reports regarding Acox's March 21, 2007 arrest, Officer Parham and Officer Kaporis described Acox as an African-American with green eyes. (Trial Tr. vol. 2-A, 330, Apr. 1, 2008; Trial Tr. vol. 3-A, 542-43, Apr. 1, 2008.)

The Government also called Michael Bush ("Bush") to testify regarding his interactions with Acox at the Ewing Annex Hotel (the "Ewing Hotel") on January 20, 2007. Specifically, Bush testified that, on the day of the robbery, he worked as a manager at the Ewing Hotel and that Acox was a tenant at the hotel at the time. (Trial Tr. vol 3-A, 500-02, Apr. 2, 2008.) He further testified

that, around noon on January 20, 2007, Bush told Acox that Acox was behind on his rent.  (Trial Tr. vol 3-A, 503-04, Apr. 2, 2008.)  In response, Acox informed Bush that he was leaving, but would return later to pay.  (Trial Tr.  vol 3-A, 504, Apr. 2, 2008.)  According to the hotel's ledger books, Acox subsequently paid his rent between 12:00 p.m. and 8 p.m. (the "second shift") with $80 in cash.  (Trial Tr.  vol 3-A, 505-06, Apr. 2, 2008.)  At trial, Taylor Attaway ("Attaway") testified that he worked the second shift at the Ewing Hotel on January 20, 2007 and that he believed Acox paid his rent to Attaway around 2:00 p.m. that day.  (Trial Tr. vol 3-B, 548-51, Apr. 2, 2008.)  During cross-examination, however, Attaway testified that he had no actual recollection of when Acox paid him, that 2:00 p.m. was just an estimate, and that he only recalled that time because defense counsel had shown him a note that Acox had saved.  (Trial Tr. vol 3-B, 651-53, Apr. 2, 2008.)

According to Bush, a few days after the bank robbery, he gave the FBI an envelope containing over $900, which represented the receipts collected at the Ewing Hotel during the second shift.  (Trial Tr.  vol 3-A, 507-08, 521-24, Apr. 2, 2008.)  Bush further testified that, amongst the $900, the FBI found sixty dollars in red-stained bills.  (Trial Tr. vol 3-A, 508-09, 524, Apr. 2, 2008.)  Agent Weber confirmed that he found three red-stained twenty-dollar bills in the envelope.  (Trial Tr. vol 3-A, 588-89, Apr. 2, 2008.)   Eileen Waninger ("Waninger"), a supervisory chemist in the FBI's chemistry unit, testified that the money found behind the bank on January 20, 2007, the money found on Acox on January 20, 2007, and the money found in the envelope at the Ewing Hotel all tested positive for the same dye used in bank dye packs.  (Trial Tr. vol 2-B, 470-74, Apr. 1, 2008.)

Finally, Acox also testified regarding his activities on January 20, 2007.  Specifically, Acox denied robbing the Belmont North Community Bank or that he owned the hat, blue scarf, and black glove found near the bank.  (Trial Tr. vol 3-B, 677, Apr. 2, 2008.)  In addition, Acox denied that he

was flailing his arms in the middle of the street later that night, that he was arrested in a sandwich shop, or that he had over $100 in red-stained currency on his person when arrested. (Trial Tr. vol 3-B, 677-80, Apr. 2, 2008.) According to Acox, on January 20, 2007 at approximately 11:00 p.m., two police officers grabbed his arms and arrested him while he tried to buy food at a convenience store next door to the sandwich shop. (Trial Tr. vol 3-B, 659-63, 679-80, Apr. 2, 2008.) He further testified that he had approximately twenty-dollars on his person at the time of his arrest, but that this currency did not appear to be stained red. (Trial Tr. vol 3-B, 663-64, Apr. 2, 2008.) He also admitted that he paid his rent on January 20, 2007 with cash, but could not recall the denominations of the bills used. (Trial Tr. vol 3-B, 666-67, Apr. 2, 2008.)

Acox's motion with respect to Count III is based solely on the argument that the Government failed to prove his identity. Specifically, he contends that the discrepancies between the witnesses' description of the offender and Acox's physical characteristics preclude a finding of guilty beyond a reasonable doubt. Viewing the evidence in the light most favorable to the Government, as the Court must at this stage, a rational trier of fact could have found that Acox was the individual who robbed the Belmont North Community Bank on January 20, 2007. Even with the "discrepancies," it was conceivable for the jury to credit Kee's and Woods's eyewitness identifications of Acox as the bank robber. Moreover, the Government did not rely solely on these identifications and Acox's physical characteristics to establish the essential elements of the bank robbery charge beyond a reasonable doubt. Ultimately, Acox has failed to show that the evidence offered against him at trial was insufficient to sustain his conviction as a matter of law. Therefore, Acox's motion for a judgment of acquittal is denied with respect to Count III.

II.     Motion for a New Trial

A motion for a new trial under Rule 33(a) should be granted only if required by "the interests of justice." Fed. R. Crim. P. 33(a). Such a motion should be granted sparingly and is only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Acox raises three grounds in support of his motion for a new trial, all of which fail to establish that it would contravene the interests of justice to let the verdict stand.

Regarding the first bases, Acox argues that the Court erred in denying his pre-trial motion to compel the Government to disclose identifying information of the additional individuals whose pictures were included in a photo array shown to Kee and Woods. In support of his position, Acox argued that the information was necessary to determine where the individuals lived and where they were located on the day of the robbery. (Dk. #53, Mar. 14, 2008 Order.) Significantly, Acox did not challenge the photo array as being improper or suggestive at the time. As such, the Court granted Acox's motion with respect to the one individual initially identified by Kee, noting that the exculpatory nature of such information had yet to be seen. (*Id.*) However, the Court denied Acox's request for identifying information of the remaining four individuals, concluding that such information was irrelevant. In the instant motion, Acox failed to raise any new arguments regarding the relevance of the undisclosed information. Nor can he, as information related to the identity and location of the four additional individuals did not have any tendency to make any fact or consequence to the determination of Acox's guilt more or less probable, as required by Federal Rule of Evidence 401. At trial, the jury saw the photo arrays shown to Kee and Woods and both parties had an opportunity to question the two witnesses regarding their respective identifications. (Trial Tr., vol. 2-A 364-66, Apr. 1, 2008; Trial Tr. vol. 2-B 407, Apr. 1, 2008.) Ultimately, the issue

focused on the credibility of the witnesses who identified Acox in the photo array, not the identity of the randomly-selected photos. Thus, because the identifying information of four additional individuals included in the photo array was not relevant, and, therefore, inadmissible at trial, *see* Fed. R. Evid. 402, the non-disclosure of such information does not require a new trial.

Acox also claims that the Court erred when it sustained an objection made by the Government to a statement made by his counsel during his opening statement. The statement at issue related to the identity of the individual whom Kee testified that she had initially selected in the photo array. The Court sustained the objection because it had previously ordered the parties to raise any line of questioning regarding that issue outside the presence of the jury and had yet to make a ruling regarding the permitted scope of such questioning. (Pre-Trial Conf. Tr. 18-19, Mar. 24, 2008; Trial Tr. vol. 2-A 367-68, Apr. 1, 2008.) Again, Acox does not raise any new arguments regarding the Court's decision. Thus, given the circumstances surrounding the objection, the Court concludes that it did not err in sustaining the Government's objection during opening statements. Nor did the Court's decision jeopardize Acox's substantial rights, as the individual's identity was subsequently disclosed at trial and did not have any tendency to make any fact or consequence to the determination of Acox's guilt more or less probable, *see* Fed. R. Evid. 401. (Trial Tr. vol. 3-A 593-94, 612-13, Apr. 2, 2008.) During the criminal trial, both parties had the opportunity to question Agent Weber, who assembled the photo array, regarding how the photo array was created and Kee's examination of the photo array. (Trial Tr. vol. 3-A 591-605, 632-33, Apr. 2, 2008.) Agent Weber also explained that he did not investigate the individual whom Kee testified she had initially selected. (Trial Tr. vol. 3-A 593-94, 612-13, Apr. 2, 2008.) Thus, in light of the procedural posture of the case when the Government objected, the evidence subsequently introduced at trial,

and the irrelevant nature of the individual's identity, the Court concludes that it did not err in sustaining the Government's objection during opening statements, nor does its prior decision warrant a new trial.

Finally, with respect to Count III, Acox maintains that the Court erred in refusing to advise the jury of a lesser included offense instruction for possession of stolen bank money or property under 18 U.S.C. § 2113(c). "'To be entitled to an instruction regarding a lesser-included offense, a defendant must establish that (1) the offense on which he seeks an instruction is a lesser-included offense of the one charged, and (2) a rational jury could find him guilty of the lesser offense but not guilty of the greater offense.'" *United States v. Puckett*, 405 F.3d 589, 600 (7th Cir. 2005) (*quoting United States v. McCullough*, 348 F.3d 620, 624 (7th Cir. 2003)). Such an instruction is not automatic. *United States v. Boyle*, 57 F.3d 535, 545 (7th Cir. 1995). "Only if under a different, but reasonable view, the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury." *Id.* (internal quotations omitted). Thus, where the evidence presents no doubt as to the defendant's guilt with respect to the greater crime, the court need not instruct the jury on the lesser included offense. *Id.*

Putting to one side the first requisite element of the lesser-included offense instruction, Acox was not entitled to a jury instruction on the knowing possession on stolen bank currency because the evidence presented at trial would not have "permit[ted] a rational jury to find guilt under the lesser charge and to acquit on the charge alleged." *See United States v. Windsor*, 981 F.2d 943, 946 (7th Cir. 1992). As discussed above, the evidence submitted at trial was sufficient to establish guilt beyond a reasonable doubt with respect to the essential elements of the bank robbery offense. Such

evidence included, but was not limited to, eyewitness identifications from Kee and Woods, eyewitness testimony regarding the clothes worn by the perpetrator, including a light blue scarf, testimony from Officer Martinez and Agent Weber that a hat, glove, and light blue scarf were found near the bank after the robbery, testimony from Agent Weber that Acox was shown in a surveillance video wearing a light blue scarf the morning of the robbery, but not later that day (as well as a surveillance videos regarding the same), and testimony indicating that the money found in the Ewing Hotel envelope and money found in the possession of Acox tested positive for the same dye used in bank dye packs. Furthermore, while Government witnesses testified that Acox had been arrested with over $100 of red dye-stained currency, Acox did not testify that he had possessed red-stained money that he knew was stolen, but had received it from someone else. Instead, he denied that he possessed these bills and maintained that, at the time of his arrest, he had approximately $20 in currency, none of which appeared to have red stains.  Thus, because the evidence would not have permitted a rational jury to find Acox guilty of possession of stolen bank money and acquit him on the charge of bank robbery, the Court did not err in refusing Acox's request for a jury instruction on the lesser charge.

For the reasons stated above, the Court concludes that it did not err in denying Acox's pre-trial motion for disclosure of identifying information of all of the parties included in the photo array. Nor did it err in sustaining the Government's objection to a statement made by defense counsel regarding the identity of a specific individual included in the photo array or in denying Acox's request for a lesser included offense instruction.  Therefore, because the interests of justice do not require that Acox be granted a new trial, Acox's motion for a new trial as to all three counts is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, Acox's Post Trial Motion For Judgment of Acquittal and/or For a New Trial is granted in part and denied in part.  Acox's motion for a judgment of acquittal is granted as to Counts I and II, but denied as to Count III.  In addition, Acox's motion for a new trial is denied on all counts.


So ordered.

Virginia M. Kendall, United States District Judge
Northern District of Illinois


Date:   September 10, 2008